REQUA v. IRVIN et al.

(Supreme Court, Appellate Division, Second Department. April 13, 1897.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE.
　　A finding of fact on conflicting evidence will not be disturbed on appeal.

Appeal from court of common pleas, equity term.
Transferred from First department.
Action by Catharine Requa against Richard Irvin, Jr., and L. H. Biglow, impleaded with others, for the reconveyance of certain real estate and an accounting for rents and profits. From so much of a judgment as dismissed the complaint on the merits as to defendants Biglow and Richard Irvin, Jr., said defendants appeal. Richard Irvin died after the appeal was taken, and Mary M. Irvin and Daniel Lord, as the executors of his will, were substituted in his place. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John Sabine Smith, for appellants.
Frederick H. Man, for respondents.

PER CURIAM. The apparent purpose of this action was to obtain a reconveyance to the plaintiff of certain property in the city of New York, known as "Lots Nos. 537, 539, and 541 West Twenty-Fourth Street," on which was a factory building, and to require an accounting for rents and profits. Prior to August, 1884, the plaintiff had title to the premises. They had been leased to the Triplex Insulated Wire & Rubber Company, of which Leonard F. Requa was the manager and principal stockholder. The business of the company was manufacturing insulated wire. The premises were incumbered by mortgages of $20,000 and $8,000. In the summer of 1884 an action to foreclose the second mortgage was pending, and

it became desirable, not only for the relief of the property from the foreclosure action, but for the purpose of the business of the company, that some financial assistance should be obtained. With that view, Leonard F. Requa, through the defendant Habirshaw, requested Richard Irvin, Jr., and others, to advance money for such purposes. The sum deemed requisite was $20,000, of which $5,000 was to be used in reduction of the amount of the mortgages, and $15,000 to be paid into the treasury of the company. A syndicate was formed to carry out an arrangement to raise $20,000 for such purposes. A bond for that amount was made by Leonard F. Requa to Irvin, secured by a mortgage of the plaintiff upon the premises, and a deed of the premises was also made by the plaintiff to Habirshaw, subject to the mortgages amounting to $48,000. Thereupon the money was raised through the members of the syndicate, the mortgages reduced $5,000, the foreclosure action discontinued, and the balance ($15,000) was paid into the treasury of the company. This was done pursuant to an arrangement made with Requa by which 150 shares of treasury stock of the company were taken at par (that is to say, for the $15,000), and 350 shares were taken from Requa at $5,000. The persons constituting the syndicate were, by reorganization, to have the management of the business of the company, and they were to have certain options, to expire on January 1, 1886, which permitted them to become the purchasers of a majority of the capital stock, which consisted of 5,000 shares. It was contemplated that in some event, or for some reason, after a trial of the business the members of the syndicate might elect or desire to have the money they had so subscribed and put in refunded to them. It was part of the arrangement that it should be done in the designated event, and that to secure such repayment the plaintiff should convey the premises to Habirshaw. The deed was made by her pursuant to such arrangement with Leonard F. Requa. As to the particular terms of the agreement, there is a conflict in the evidence of Requa and on the part of the defendants. The trial court found that it was "agreed that if the business of the company should not by January 1, 1886, prove remunerative, he, said Requa, would repay said sum of $20,000, and that such repayment should be secured by a pledge of said property," and that the business of the company "did not prove to be successful, and on the 1st of January, 1886," it was not successful. The facts so found are supported by the evidence.

In 1885, it seems, the company borrowed some money to carry on its business. Early in 1886 judgments were recovered against it, and executions were by the sheriff levied upon the machinery, tools, and other personal property in the factory, all of which was sold early in March. In the meantime, and on February 23, 1886, a resolution of the trustees with a view to a dissolution of the company was adopted; and two days later, at an adjourned meeting of the board of trustees of the company, it was resolved that the company should proceed to voluntary dissolution. Proceedings were had for such purpose, and a receiver was appointed, who sold the letters pat-

ent belonging to the company. And following this another incorporated company, known as the India Rubber & Gutta-Percha Insulating Company, was created, for a business somewhat similar to that of the former company, and was under the management of the persons who had formed the syndicate before mentioned. The charge is made that they did not act in good faith in the management of the business of the Triplex Company, but proceeded with a view to embarrass the company, freeze out Requa, and succeed to the business by means of the new company. The plaintiff, so far as appears, had no interest in the business of the Triplex Company, other than in aid of her brother, and in its financial success, so as to enable her to obtain the reconveyance of the premises. Her brother, Leonard F. Requa, was one of the trustees of that company, and the proceedings of the board of trustees with the view to its dissolution, and the transactions generally, had his acquiescence. Those facts bear only incidentally upon the question within the issues. The relief sought by the plaintiff was a reconveyance of the property, and an accounting to her for the rents and profits. The alleged fact upon which the relief was mainly founded is that it was within the agreement with Habirshaw and his associates that unless on or before Janary 1, 1886, they elected to withdraw from the company, and so notified the plaintiff, the premises should be reconveyed to her, and that the deed made by her to Habirshaw should be treated after that time as security for the repayment of the $20,000 by Requa to them in the event only that they on or before that day elected so to withdraw. This view of the arrangement is that given by the testimony of Mr. Requa. And the plaintiff's evidence is substantially to the effect that such was the communcation made by her brother to her of the arrangement. The evidence on the part of the defendants was otherwise, and upon that subject the question was one of fact, and it cannot be seen that the conclusion of the trial court adversely to the plaintiff was against the weight of the evidence. None of the defendants had any personal interview with the plaintiff, but all communications with her about the matter were had by her brother, Leonard F. Requa, who was directly interested in the business of the company, but seemed to be financially helpless to carry it on. There was much evidence given in relation to the manner in which the business of the company was conducted, and as to liabilities it incurred; and, whatever inference may have been permitted, the trial court was not required by the evidence to find that there was any bad faith in the management of the business of the company to its conclusion.

The plaintiff contends, and such was her evidence, that the execution by her of the mortgage to Irvin was obtained without her knowledge or consent. The mortgage prepared for execution was taken with the Habirshaw deed to the plaintiff by Leonard F. Requa, who with her went before a notary public, and both the deed and mortgage were executed and acknowledged by her. And although Mr. Requa went some distance into the country, where his sister was, to procure the execution by her of the papers, and with her

went several miles in a buggy to the notary, and took the executed papers back to the city, he says that he did not know that one of the papers executed by the plaintiff was a mortgage, and that he did not understand a mortgage was to be made by her. The evidence on the part of the defendants was to the effect that the mortgage was within the arrangement made by them with or through Mr. Requa. There was no apparent reason for taking the mortgage to serve substantially the same purpose as that for which the deed of the property to Habirshaw was intended. But this is not a question of much consequence, since, by a sale of the premises pursuant to judgment of foreclosure of the first mortgage of $20,000, the one so questioned ceased to have the appearance of a lien upon the property. A careful examination of the evidence leads to the conclusion that the questions presented for the trial court were those of fact only, and that all the facts essential to the determination there made, as represented by the conclusions of law, had the support of evidence, and the view which the trial court was permitted to take of it was such that the result cannot well be said to have been against the preponderance of evidence. We have also examined the many exceptions taken to the exclusion and reception of evidence, and to the numerous refusals to find as requested, and think that there was no error to the prejudice of the plaintiff in any of the rulings of the court.

The judgment, so far as appealed from, should be affirmed.